# Fidelity Phoenix Insurance Company of New York v. Vincent.

(Decided May 29, 1928.)

## Appeal from Edmonson Circuit Court.

1. Insurance.—In action on fire policy providing, in effect, that failure to furnish proof of loss should not work forfeiture of insurer's liability but that furnishing of such proof was condition precedent to right to institute action, held that it was necessary for insured to plead that he had furnished proof of loss.

2. Insurance.—In action on fire policy providing that proof of loss was condition precedent to insured's right to institute action, where insurer sought to plead defense under iron safe and inventory clause of policy, but that paragraph of answer was wholly insufficient to constitute defense because it did nothing further than plead that policy contained such clause, and failed to plead any facts constituting breach thereof, held that pleadings were not sufficient to constitute waiver of loss provisions of policy.

3. Insurance.—In action on fire policy providing that proof of loss by insured was condition precedent to right to institute action, evidence held insufficient to establish that, before action was instituted, insurer had denied all liability, thereby waiving proof of loss.

4. Insurance.—It cannot be said that, when an insurer declines to settle for loss on ground that proof of loss has not been furnished, he thereby waives provision of contract that proof of loss must be furnished.

5. Insurance.—In action on fire policy containing provision that proof of loss was condition precedent to right of insured to institute action, where action was instituted on same day on which nonwaiver agreement was signed by parties, and before insurer had opportunity to make investigation of character of loss, held that proof of loss was not waived.

6. Insurance.—In action on policy providing that proof of loss is condition precedent to right to institute action on policy rather than condition precedent to liability under it, trial court should dismiss action brought prior to proof of loss and on day nonwaiver agreement was entered into without prejudice as having been prematurely instituted.

GORDON & LAURENT, T. M. GALPHIN, JR., and LOGAN & VINCENT for appellant.

MILTON CLARK and LOGAN & McCOMBS for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—
Reversing.

Appellant issued and delivered to appellee a fire insurance policy insuring a frame store building, fixtures,

and stock of goods against loss by fire to a total amount of $2,600. The property insured was destroyed. This action was instituted to recover the full amount of the policy. There was a judgment for insured, and insurer appeals.

The proof of loss and other relative clauses of this insurance policy are so worded that failure to furnish proof of loss does not work a forfeiture of insurer's liability; but the furnishing of proof of loss is a condition precedent to the right to institute an action on the policy. Kenton Insurance Co. v. Downs, 90 Ky. 236, 13 S. W. 882, 12 Ky. Law Rep. 115, is perhaps the outstanding opinion from this court on this question. See, also, Germania Insurance Co. v. Ashby, 23 Ky. Law Rep. 1564, 65 S. W. 611, where the doctrine was succinctly written:

> "Proof of loss is but a condition precedent to the action; it is not a condition upon which liability exists."

See, also, Kenton Insurance Co. v. Adkins, 12 Ky. Law Rep. 291; Phoenix Insurance Co. v. Creason, 14 Ky. Law Rep. 573; Am. Insurance Co. v. Heaverin, 16 Ky. Law Rep. 95; Orient Ins. Co. v. Clark, 22 Ky. Law Rep. 1066, 59 S. W. 863, 22 Ky. Law Rep. 1066; Continental Casualty Co. v. Waters, 30 Ky. Law Rep. 245, 97 S. W. 1103, 30 Ky. Law Rep. 243.

The distinction between the proof of loss clause of this policy and those of policies so worded that furnishing proof of loss must be held to be a condition precedent to liability was clearly defined in Standiford v. American Insurance Co., 208 Ky. 731, 271 S. W. 1042, which is perhaps the latest utterance of this court on the question. Hence the trial court properly sustained a general demurrer to the petition which failed to plead that insured had furnished proof of loss in conformity with the provisions of the policy. The amended petition cured the defect by pleading that, before the action was instituted, insured denied all liability, and thereby waived the proof of loss provision of the policy. Issue on this question was made by traverse of the allegations of the amended petition. This is the only issue made by the pleadings. It was admitted by appellee that he did not furnish proof of loss before instituting the action, and it was admitted by appellant that the property insured had been destroyed by fire, though it was denied that it was worth more than $500. Appellant sought to plead a defense

under the iron safe and inventory clause of the policy, but this paragraph of the answer was wholly insufficient to constitute a defense, because it did nothing further than plead that the policy contained such a clause, which was quoted. It failed to plead any facts constituting a breach thereof. In this state of case the pleadings were not sufficient to constitute a waiver of the proof of loss provisions of the policy, within the rule written in Lancashire Insurance Co. v. Monroe, etc., 101 Ky. 12, 39 S. W. 434, 19 Ky. Law Rep. 204.

The question presented by the appeal then is: Was the evidence sufficient to establish that, before the action was instituted, appellant denied all liability, and hence waived the proof of loss provision of the policy? This court's careful consideration of the evidence has led to the conclusion that such is not the case. It cannot be said that, when an insurer declines to settle for a loss upon the ground that proof of loss had not been furnished, he thereby waives the provision of the contract that proof of loss must be furnished. The evidence of appellee himself, considered as a whole, establishes that appellant did nothing more than decline to settle this loss because appellee would not furnish proof of loss. On this question appellee testified that five days after the fire an adjuster for appellant visited the scene of the fire, and for what occurred his testimony is quoted:

"After he made himself acquainted with me, he demanded the invoice, and I said, 'I am sorry to say it is gone, too,' and he said, 'Do you mean to say it was burned?' and I said, 'Yes,' and he said, 'Where is your account file?' and I said, 'It was burned, too,' and he says, 'I am sorry to tell you, Mr. Vincent, but I can't pay it,' and I says, 'That is too bad, for I am going to lose about $1,800 besides the policy,' and I said, 'Is there no way that I can get this fixed?' and he said, 'I don't know; I will have to take it up with the company,' and I said, 'Can I write to the wholesale people and get the bills of goods that I have bought?' and he said, 'You could do that, but that would not show your sales.'

"Q. And he refused to pay you and left? A. Yes, sir; and didn't pay me."

The statement, "I am sorry to tell you, Mr. Vincent, I can't pay it," which appellee says appellant's adjuster made to him on this occasion, standing alone, unex-

plained, would doubtless be sufficient to constitute a waiver of the proof of loss clause of the contract. What appellant said further upon his direct examination, as quoted, seems clearly to establish, however, that this was not a denial of liability upon the part of the company, but merely the adjuster's refusal to settle without being furnished some evidence by way of proof of loss as to the value of the property burned. That such is the case is established beyond question by the cross-examination of appellee as to the full conversation between him and appellant's adjuster on this occasion. It reads:

"Q. There was Mr. Crump came to see you, and you told him you didn't have any inventory? A. I told him I had lost it.

"Q. You suggested to him that you might send to the wholesale houses and get the invoices and he suggested that it would not show your sales, and that was true, wasn't it? A. Of course it was.

"Q. Then you gave Mr. Crump no information about what you had in the store, but your word for it? A. At that moment I didn't.

"Q. You told him you had a certain amount of goods but as to proving it by the invoice and a sales record you could not do that? A. I didn't have any.

"Q. He said to you at that time, didn't he, that it would be a matter for the company to adjust, but that he could not pay you unless you had the inventory? A. As I told you a while ago, if I can write and get duplicate bills from the wholesale houses, as you said a minute ago, and he said they would show the price, but not the sales, and he said, 'I am sorry for you, if you had your tax book here or your invoice book I could let you sign up and get your money in ten or fifteen days, but I can't pay you anything under the circumstances, and I don't know what the company is going to do about it.' And, when I suggested this idea that we would write to the company, he objected to that, and he said, 'I would rather give you $50, than take a dollar from you,' and I said, 'Is there no way we can get this fixed?' and he kinder dropped his head and studied a minute and he said, 'The only thing I know is to get a statement from your competitors or your customers or from any of the drummers coming around where it would be convenient for you, you might get

a statement from them as to what they thought about your stock, and we might get started from that.''

In view of this testimony from appellee himself, we find not the slightest evidence of denial of liability by insurer or any of its agents. The most that can be said of this transaction between appellee and the representative of appellant is that the latter did not settle with the former then because he did not furnish proofs of loss as the policy required or any evidence whatever as to the value of the building, fixtures, and stock of goods covered by the insurance contract which had been destroyed by fire.

The only other evidence to be found in the record, which appellee insists tends to establish a waiver of proof of loss clause of the policy, is his testimony as follows:

"A.   Mr. Clark may have the date, or Bev, but it was about 55 days after the burning; there was two fellows came from Louisville and drove up and asked me if that was Windyville, and I said, 'Yes,' and they asked me where they could find G. R. Vincent, and I told them I was G. R. Vincent, and they said, 'Oh, yes, you are the fellow that had the fire,' and I said, 'You boys get out,' and they got out, and they said, 'Where is your invoice?' and I said, 'I lost it in the fire,' and they said, 'Oh, yes; you didn't keep any invoice,' and I said, 'Yes, I did,' and they said, 'I can't pay you unless you show me this invoice,' and he said, 'Didn't you know that you were liable to lose your insurance if you didn't keep your invoice?' and I said, 'I kept an invoice,' and he said, 'I would like to see it,' and I said, 'I wouldn't fool with you a minute; if you are looking for trouble, Windyville is headquarters for trouble, and you can get it,' and the other fellow says, 'I feel like he does; you are trying to impose on him,' and I tried to explain it to him, and told him I had taken the invoice to the house each night, and that I was in bed with the measles, and my clerk delivered it to the house, but my brother took it to the store and failed to bring it back for some cause, and that was how it was gone, and he said, 'Oh, yes; I see,' and he said, 'Will you care to sign some instruments in writing to assist in helping find out how came this fire?' and I said, 'I will not sign anything unless my

lawyer tells me to sign it, unless you are ready to pay me off,' and he said, 'Let's go to town,' and I did so.

"Q. When you got to town what did you do? A. I looked for Bev Vincent, and it was reported that he was in Bowling Green, and I began to look around, and Mr. Clark was the first one I found, and I asked him if he would represent me, that my other lawyer was gone, and he said he would, and to bring them over, and I did.

"Q. What did you do then? A. I got my policy from the bank, and I went on up there, and they began to talk first one way and then another, and they kept talking about me signing a paper for them, and Mr. Clark said, 'Some insurance man came here the other day and said they would not do anything until a paper was signed, and it doesn't amount to anything in the world, and go ahead and sign it, and then do your figuring,' and I said, 'You needn't figure with me at all, for it would take $2,-600,' and he said they might want to replace something or build the house back, and I said, 'If they do, I will give them credit, and otherwise I will not do one thing,' and they still refused to pay, and Clark said, 'Well, we will sue you if you don't pay us,' and Mr. Harrison, I believe it was, said, 'What do you want me to report to the company?' and I said, 'I don't care whether you report anything or not,' and he said, 'Well, I want something to report,' and I said, 'Tell them I am looking for $2,600,' and we parted.''

The most that can be spelled out of this evidence is that on this occasion the representatives of appellant were insisting that appellee furnish some evidence as to the value of the property insured which had been destroyed by fire, and that appellee emphatically declined to do so. The "paper" which appellee testified was produced to him on this occasion, and which his attorney advised him he could sign without losing any of his rights, was termed a "nonwaiver agreement," and was to the effect that any action taken by insurer in investigating the cause of the fire or the amount of loss and damage caused by it would not "waive or invalidate any of the conditions of the policy" of insurer, nor "waive or invalidate any rights whatever of either of the parties" thereunder.

This action on the policy was instituted on the same day on which this last-mentioned conversation occurred, and on which the nonwaiver agreement was signed by the parties. If, following the execution of the nonwaiver agreement, insurer and insured, pursuant to its terms, had made an investigation as to the value of the property insured which had been destroyed by fire and had ascertained its value, each party being cognizant of the acts and conclusions of the other, and their conclusions as to the value of the property destroyed had agreed, there would doubtless be a basis for the contention that the proof of loss clause of the policy had been waived; but that question and that state of case is not here presented. Before insurer had opportunity to make any character of investigation, and on the same day that the nonwaiver agreement was signed, and immediately after the conversation with representatives of insurer, in which they were insisting that insured comply with the terms of the policy by furnishing proof of loss, and immediately after insured declined to do so, but stated to insurer's agents that they need not figure with him at all, because it would take $2,600 to satisfy him, and that the only report he would make to the company was "I am looking for $2,-600," this action was instituted.

In this state of case there is no alternative but to hold that the proof of loss clause of the policy was not waived. Under the peculiar phraseology of the contract of insurance sued upon, it appearing that proof of loss is a condition precedent to the right to institute an action on the policy rather than a condition precedent to liability under it, the trial court should have dismissed this action without prejudice as having been prematurely instituted, and erred in submitting any issue to the jury.

For the reasons indicated, the judgment herein is reversed, and this cause is remanded for proceedings consistent herewith.

The whole court, except Judge Logan, sitting.