ACCEPTED
03-14-00202-CV
5032109
THIRD COURT OF APPEALS
AUSTIN, TEXAS
4/24/2015 5:37:02 PM
JEFFREY D. KYLE
CLERK

No. 03-14-00202-CV

FILED

*November 13, 2015*

Third Court of Appeals
Jeffrey D. Kyle
Clerk

# IN THE COURT OF APPEALS
## THE THIRD DISTRICT OF TEXAS
## AUSTIN TEXAS

**NEMER MASSAAD, and all other OCCUPANTS**

Appellant

V.

**WELLS FARGO BANK NATIONAL ASSOCIATION AS TRUSTEE
FOR OPTION ONE MORTGAGE LOAN TRUST 2006-3,
ASSET BACKED CERTIFICATES, SERIES 2006-3**

Appellee.

Appeal from the County Court at Law Number One
Travis County, Texas
Trial Court Case No. C-1-CV-14-000401
Hon. Joe Carroll, presiding

**Oral Argument Requested**

# MOTION FOR REHEARING
# EN BANC

i

## Identity of the Parties

**Appellant/Defendant**
NEMER MASSAAD

**Counsel for Appellant/Defendant**

James Minerve
State Bar No. 24008692
115 Saddle Blanket Trail
Buda, Texas 78610
(210) 336-5867
(888) 230-6397 (Fax)
(Appellate, Post-trial, and Appellate)

**Appellee/Plaintiff**
WELLS FARGO BANK NATIONAL ASSOCIATION AS TRUSTEE FOR OPTION ONE MORTGAGE LOAN TRUST 2006-3,ASSET BACKED CERTIFICATES, SERIES 2006-3

**Counsel for Appellee/Plaintiff**

Mackie Wolf Zientz & Mann, P.C.
Mark D. Cronenwett
State Bar No. 00787303
Parkway Office Center, Ste 900
14160 North Dallas Parkway
Dallas, Texas 75254
(214) 635-2650
(888) 230-6397 (Fax)
(Appellate, Post-trial, and Appellate)

# Table of Contents

Identity of Parties and Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .iv

Glossary of Terms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Issues Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Argument Issue 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    The Puentes and Crawford Holdings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    Puentes v. Fannie Mae Case Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    Federal Home Loan Mortgage Corp. v. Crawford Case Summary . . . . . . . . .10

    Legal Injury Rule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    Continuing Tort Rule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Argument Issue 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

    Whether the courts have defined the accrual of action in a limitation case . . . 21

    Hickey v. Huntington National Bank . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

    Holy Cross Church of God in Christ v. Wolf . . . . . . . . . . . . . . . . . . . . . . . 22

Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Certificate of Conference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Appendix . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

## Table of Authorities

<u>Cases</u>                                                                Page

*Amstadt v. U.S. Brass Corp..*
919 S.W.2d *644,* 652 (Tex. 1996)... ..................................... 13

*Arauette v. Hancock*
656 S.W.2d 627,629 (Tex. App. ˉSan Antonio 1983, writ re'd n.r.e.)........ 20

*Brown v. Henderson,* 941 S.W.2d 190 (App. 13 Dist.. 1996) .................. 12

*Cuellar* V. *Martinez,*625 S.W.2d *3,5* (Tex.Civ.App.-San Antonio 1981,
no writ) ...................................................... 14

*Childs v. Haussecker.*
*974* S.W.2d 31 (Supp. 1998, rehearing overruled)............................. 15

*Doe v. Catholic Diocese of El Paso,*
362 S.W.3d707, 716 (Tex. App. -El Paso 2011, no pet.) ........................... .7

*Fandev* v. *Lee.*
880 S.W.2d 164,168 (Tex.App.-El Paso 1994, writ denied) .................... 14

*Federal Home Loan Mortgage Corp. v. Crawford,* No. 14-13-0010-CV
Tex.App—Houston [14th Dist.] (2014)............................................ 6,10

*Houtex Ready Mix Concrete & Materials v. Eagle Const. & Environment
Services, LP,* 226 S.W.3d 514 (App. 1 Dist. 2006). ............................. 12

*Hickey v. Huntington National Bank,* No. 01-12-00670-CV (Tex.App.—
Houston [1st Dist.] (2013))............................................... 21

*Holy Cross Church of God in Christ v. Wolf,* 44 S.W.3d 562, 566 (Tex.2001)...... 21

*Johnson v. Highland Hills Drive Apartments.* 552 S.W.2d 493. 495 Tex.Civ.App.-
Dallas 1977), writ refd n.r.c. per curiam, *568* S.W.2d 661;(Tex. 1978) ......... .. 14

*Johnson* V. *Fellowship Baptist Church,* 7 S.W.2d 203, 204
(Tex.App.—Corpus Christi 1981, no writ)................................. ...........14

*Kennedy* v. *Highland Hills Apartments.*
905 S.W.2d 325,326 Tex.App.-Dallas 1995, no writ .................................... .13

*Krohn* v. *Afarcus Cable Assocs.. L.P..*
201 S.W.jd 876, 880 (Tex. App-Waco 2006, pet. denied) .. .......................20

*Lopez v. Sulak,* 76 S.W.3d 597, 605 (Tex.App.—Corpus Christi 2002,
no pet.)............................................................................................ . 14

*Mitchell Energy Corp. v. Bartlett,* 958 S.W.2d 430
(Tex. App.—Fort Worth 1997, rehearing overruled, review denied, rehearing
Of petition for review overruled)................................................. 16

*Morriss v. Enron Oil & Gas Co..,* 948 S.W.2d 858 (App. 4 Dist. 1997) ............16

*Murray v. San Jacinto Agency, Inc.,* 800 S.W.2d 826, 828 (Tex. 1990) .............. 7

*Puentes v. Fannie Mae.* 350 S.W.3d 732, 734-35 (Tex. App. - El Paso
2011, Pet. dism'd ...............................................................................8, 9

*Pustejovsky v. Rapid Arnerican Corp.,* 35 S.W.3d 643 Supp. 2000) ....... .............. 15

*Rice v. Pinney,* 51 S.W.3d 705; 2001 Tex. App. LEXIS 1831 ..................... 13

*Rogers v. Ardella Veigel Inter Vivo Trust* 162 S.W.3d 281 at 290) ....    20

*Rogers v. Ricane Enterprises, Inc.,* (App. 7 Dist, 1996) 930 S.W.2d 157. ............. 16

*Robinson v.* Weaver, 550 S.W.2d 18, 19 (Tex. 1977) .............................................. 7

*Sullivan v. Bickel & Brewer,* 943 S.W.2d 477 (App. 5 Dist. 1995,
writ denied, rehearing of writ of error overruled)....................................16

*Two Pesos. Inc.* v. *Gulf Ins. Co..* 901 S.W.2d 495.500 (Tex. App.—
Houston [14th Dist.] 1995, no writ) ........................................................ 19

*Ward v. Malone.* 115 S.W.3d 267. 270 (Tex. Atm-Corpus Christi 2003.
pet. Denied) ...................................................................................... 14

## Texas Rules of Appellate Procedure

Texas Rule of Appellate Procedure 39.1 ................................ 3

## Texas Rules of Civil Procedure

Texas Rule of Civil Procedure 510 (738-754. Repealed by Order of April 15-2013, Eff. Aug. 31, 2013) ................................ 10

## Texas Property Code

Texas Property Code Section 24.002-008 ... ................................ 13

Texas Property Code Section 24.005(b) ,,,,,,,,,,,,,,,,............................. 5, 6

## Texas Civil Practice and Remedies Code

Texas Civil Practice and Remedies Code 31.005 (2013) ...................... 16

Texas Civil Practice and Remedies Code Ann. § 16.003(a) and (b) (West Supp. 1998) ........................................... 10

Texas Civil Practice and Remedies Code 16.03 ...................... 12, 21, 23

Texas Civil Practice and Remedies Code §16.035.................... 22

## Glossary of Terms

Citation in this Brief will be as noted below to the following volumes of the record on file in this appeal, said volumes being incorporated herein by reference:

Clerk' Record                         CR

Reporter's Record Volume 1            RR1

Reporter's Record Volume 2            RR2

Reporter's Record Volume 3            RR3

## Statement of the Case

This is a Forcible Detainer Case. October 18, 2011 the Appellee filed a Forcible Detainer Action. November 7, 2011, the JP Court issued a judgment in favor of Appellant, denying the possession to the Appellee.[1] Appellee re-filed its lawsuit under Cause No. 051840 and the JP Court dismissed it as a duplicate case on November 7, 2011.[2] November 7, 2011, a party in interest, at the time, filed in District Court a Quiet Title Action, Cause No. D-I-GN-I1-003424.[3] November 21,2011, the Appellee filed another FED Action in this Court, Cause No. 052212. December 29, 2011, this Court issued Judgment for the Appellant.[4] November 6, 2013, the Appellee filed another FED action (FED Action 4) in the JP Court,

---

1 Exhibit C: FED Order 1, in favor of Defendant, dated November 7, 2011, Cause No. 051975.
2 Exhibit D: FED Order 2, in favor of Defendant, Duplicate Case Dismissal Order, dated November 7, 2011, Cause No. 051840.
3 Exhibit E: Quiet Title Action, filed in the 345th District of Travis County, dated November 7, 2011, Cause No. D-1GN-11-003424.
4 Exhibit F: FED Order 3, in favor of Defendant, dated December 29, 2011.

1

Cause No. J3CV13056327. The JP Court rendered judgment in favor of the Appellee. The Appellant appealed to the County Court at Law No. 1. The County Court held a trial de novo and ruled in favor of the Appellee without issuing an opinion.

## Statement Regarding Oral Argument

Pursuant to Texas Rules of Appellate Procedure 39.1, Nemer Massaad requests oral argument and submits that it would materially aid the decisional process in this case.

## Issues Presented

Appellant respectfully submits the following motion for rehearing brief which outlines the legal framework in which the Court should consider the following:

1.    Whether the Two-year limitation period of Texas Civil Practice and Remedies Code §16.003 bars Appellee's Forcible Detainer suit for possession of the property.

2.    Whether the courts have determined the accrual of action in a limitation case.

# MOTION FOR REHEARING

## STATEMENT OF FACTS

On or about September 6, 2011, the Appellee wrongfully conducted a foreclosure sale of this property.5 *RR2 at 6; RR3 at Pl's Exh. 2.* September 23, 2011, the Appellee provided the Appellant with the Notice prescribed in Texas Property Code§ 24.005(b).6 *RR2 at D's Exh. B.* October 18, 2011 the Appellee filed a Forcible Detainer Action, authorized under Texas Property Code§ 24.005(b). *RR2 at 18.* November 7, 2011, the JP Court issued a judgment in favor of Appellant, denying the possession to the Appellee.7 *RR2 at 20.* Appellee re-filed its lawsuit under Cause No. 051840 and the JP Court dismissed it as a duplicate case on November 7, 2011.8 *RR2 at 20; Appellant's Brief at 9.* November 7, 2011, a party in interest, at the time, filed in District Court a Quiet Title Action, Cause No. D-I-G.N-I1-003424.9 *RR2 at 37; Appellant's Brief at 9.* November 21, 2011, the Appellee filed yet another FED Action in this Court,

---

5 Exhibit A: Trustee Deed, dated September 6, 2011
6 Exhibit B: Notice to Vacate, dated September 23, 2011
7 Exhibit C: FED Order 1, in favor of Defendant, dated November 7, 2011, Cause No. 051975.
8 Exhibit D: FED Order 2, in favor of Defendant, Duplicate Case Dismissal Order, dated November 7, 2011, Cause No. 051840.
9 Exhibit E: Quiet Title Action, filed in the 345th District of Travis County, dated November 7, 2011, Cause No. D-1GN-11-003424.

Cause No. 052212. *RR2 at 20; Appellant's Brief at 9.* December 29, 2011, this Court again issued Judgment for the Appellant.[10] *RR2 at 20; Appellant's Brief at 9.*

October 30, 2013, the Appellee mailed the Appellant a superfluous Notice to Vacate letter. *CR 116-38, Bus. Records Aff. - Notices to Vacate' see also Appellant's Brief at 9.* Finally, over two years after September 26, 2011, when the Appellee sent the Appellant the Notice required under Texas Property Code§ 24.005(b), on November 6, 2013, the Appellee filed yet another FED action (FED Action 4) in the JP Court, Cause No. J3CV13056327. The JP Court rendered judgment in favor of the Appellee. The Appellant appealed to the County Court at Law No. 1. The County Court held a trial de novo and ruled in favor of the Appellee without issuing an opinion.

## SUMMARY OF THE ARGUMENT

The Court's holding on Appeal and Appellee's Appeal Brief are based on the holdings of two cases. *Federal Home Loan Mortgage Corp. v. Crawford,* Cause No. 14-13-0010-CV (Tex. App.—Houston [14th Dist.] Oct. 9, 2014]; and *Puentes v. Fannie Mae,* 350 S.W.3d 732 (Tex. App.—El Paso 2011, pet.. dism'd). These cases are inapplicable to this case before this court.

The applicable statute of limitations on a suit for forcible detainer is two

_____

10 Exhibit F: FED Order 3, in favor of Defendant, dated December 29, 2011.

years. *See Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a)* (West Supp. 1998). For a suit to be timely under a two-year statute of limitations, it must be brought within two years from the date on which the cause of action accrues. *Id.* A cause of action generally accrues at the time when facts come into existence authorizing a claimant to seek a judicial remedy. *Murray v. San Jacinto Agency, Inc.,* 800 S.W.2d 826, 828 (Tex.1990). In Texas, a Plaintiff's cause of action accrues, and the applicable limitations period starts to run, "when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *S.V. v. R.V.,* 933 S.W.2d 1, 4 (Tex.1996). *See also Doe v. Catholic Diocese of El Paso,* 362 S.W.3d 707, 716 (Tex.App.-El Paso 2011, no pet.)(same).

For the purposes of application of statute of limitations, a cause of action generally accrues at the time when facts come into existence which authorizes a claimant to seek a judicial remedy. *Robinson v. Weaver,* 550 S.W.2d 18, 19 (Tex.1977). Put another way, "a cause of action can generally be said to accrue when the wrongful act effects an injury. In this case, the Appellee did not suffer an injury until it sent the Three-day Notice to Vacate and the Appellant refused to vacate. The Appellee sent the Three-day Notice September 23, 2011. Three days later, September 26, 2011, and not sooner, the Appellee could file an FED Action. The Appellee's injury occurred when the Appellant did not comply with the

7

September 23, 2011 Three-day Notice to Vacate. This conduct caused the injury and gave rise to the FED cause of action, because at this point in time all the elements of Texas Property Code 24.002 were satisfied.

Despite the Appellee filing four FED actions, it was the Appellant's noncompliance with the September 23, 2011, Three-day Notice to Vacate that caused the injury and gave rise to the filing of all four FED actions. However, the fourth FED Action was time barred by Civil Practice and Remedies Code 16.03 Two Year Limitation, because the Appellant filed FED Action 4 November 6, 2013, over Two-years after September 23, 2011, the date the Appellee filed the notice effecting the injury, giving rise to an FED cause of action.

## ARGUMENT
### Issue 1

Whether the Two-year limitation period of Texas Civil Practice and Remedies Code §16.003 bars Appellee's Forcible Detainer suit for possession of the property? Yes, it does!

**The Puentes and Crawford Holdings**

In short, both cases hold that res judicata does not bar a subsequent forcible detainer action, because each forcible detainer action is a new and independent action. The Puentes Court held that each FED action is a new and independent action not subject to res judicata, because each FED action is uniquely limited in time and an award of possession on a particular date does not implicate a party's

8

possessory right on a future date. Whereas, the Crawford Court held each FED action is a new and independent action not subject to res judicata, if before filing each FED Action a new notice is delivered and the tenant refuses to surrender possession.

Neither case mentions the statute of limitations of FED actions under Texas Civil Practices and Remedies Code 16.003. These cases are a classic red herring by the Plaintiff. They are irrelevant to the question of how to apply CPRC 16.003 to forcible detainer actions. Therefore, the court should ignore these cases.

**Puentes v. Fannie Mae Case Summary**

In Puentes, the plaintiff Federal National Mortgage Association ("Fannie Mae") filed a forcible detainer action against Juan and Socorro Puentes on April 17, 2009, but lost that suit when it was unable to produce admissible evidence that it had properly provided the Puenteses with a notice to vacate. *Puentes v. Fannie Mae*, 350 S.W.3d 732, 734–35 (Tex. App.—El Paso 2011, pet. dism'd). Fannie Mae filed another forcible detainer suit on July 2, 2009, and in response the Puenteses moved for summary judgment, arguing that res judicata barred the second suit. Id. at 735.

The trial court denied the Puenteses' motion and proceeded to hear evidence on the forcible detainer suit. Following Juan Puentes's testimony that he did not receive any notice to vacate, Fannie Mae offered a business records affidavit with

9

attached exhibits reflecting that notice to vacate was sent by regular and certified mail before the second action was filed. Id. at 735–36, 738. The evidence was admitted over objection, and the trial court ultimately ruled in favor of Fannie Mae. Id. at 736.

On appeal, the Puenteses raised three issues, contending that the second suit was barred by res judicata, the trial court erred in admitting Fannie Mae's business records affidavit, and Fannie Mae's failure to pursue an appeal of the first suit deprived the justice and county courts hearing the second action of subject matter jurisdiction. Id. The appellate court rejected the second and third issues, and as to the Puenteses' res judicata argument, the court held that the second forcible detainer action was "a new and independent action to determine which party had the superior right of immediate possession at the time it was filed" that was not barred by res judicata. Id. at 739. The Puentes court reasoned that a forcible detainer action is "uniquely limited in time" and, because an award of possession on a particular date does not implicate a party's possessory right on a future date, the third element of res judicata was not satisfied. Id.

**Federal Home Loan Mortgage Corp. v. Crawford Case Summary**

On May 22, 2012, Federal Home Loan Mortgage Corporation ("Freddie Mac") filed a petition for forcible detainer in the justice court against Trinh Pham, Gary Block, and Katherine Crawford. *Federal Home Loan Mortgage Corp. v.*

10

*Crawford*, Cause No. 14-13-0010-CV, pg 1 (Tex. App.—Houston [14th Dist.] Oct. 9, 2014]. Crawford, inter alia, denied that Freddie Mac gave proper notice to vacate in accordance with the Texas Property Code. The justice court rendered judgment in favor of Freddie Mac in June 2012, and Crawford appealed to the county court for de novo review. Id.

In a supplemental answer filed in the county court, Crawford asserted an affirmative defense that Freddie Mac's forcible detainer action was barred by res judicata. Id. Crawford also filed a motion for summary judgment, arguing that Freddie Mac was barred by res judicata from filing the forcible detainer action, the third such action initiated by Freddie Mac against the defendants. Id.

Crawford supported her motion with evidence of Freddie Mac's first forcible detainer action in October 2010 against Pham. Id. In the 2010 action, a justice court rendered a take-nothing judgment in favor of Pham, and on appeal de novo, the county court rendered an order in February 2011, granting Freddie Mac's motion for nonsuit. Crawford also provided evidence of a second forcible detainer action filed by Freddie Mac against Pham, Crawford, and Block. Id. The 2011 action resulted in a take-nothing judgment in favor of the defendants, and on appeal de novo, the county court dismissed the action for lack of jurisdiction. Crawford's evidence included Freddie Mac's petitions, the justice court judgments, and the county court orders from the 2010 and 2011 actions. Id.

11

In response, Freddie Mac challenged only the third element of res judicata, arguing that a new, independent cause of action for forcible detainer accrued because the occupants were served with new notices to vacate served in February and May 2012. Freddie Mac attached case law in support of its summary judgment response. Id at 2. The Crawford Court agreed with Freddie Mac and held that a new and independent cause of action for forcible detainer arises each time a person refuses to surrender possession of real property after a person entitled to possession of the property delivers a proper written notice to vacate; therefore, res judicata would not bar a second suit based on the commission of a subsequent forcible detainer. Id at 5.

## Res Judicata in Forcible Detainer Actions

Civil Practice and Remedies Code sections addressing res judicata and estoppel effect of judgment or determination of fact or law in small claims court, justice of peace court, or lower trial court do not preclude res judicata effect of judgment or determination of those courts as to claims actually litigated therein. Tex. Civ. Prac & Rem. Code 31.005 (2013). *Brown v. Henderson*, 941 S.W.2d 190 (App. 13 Dist. 1996) (stating, "purpose of those statutes is to narrow preclusive effect of judgments of courts of limited jurisdiction by barring only claims actually litigated in limited-jurisdiction courts and allowing unlitigated claims to be tried, respectively, in county and district courts."); *Houtex Ready Mix*

12

*Concrete & Materials v. Eagle Const. & Environmental Services, L.P.*, 226 S.W.3d 514 (App. 1 Dist. 2006) (stating "the code provision abrogating the general common law rules of res judicata and collateral estoppel for justice courts and small claims courts creates an exception to the general rule against splitting causes of action, allowing unlitigated claims from courts of limited jurisdiction to be tried in county courts.").

The doctrine of res judicata precludes re-litigation of claims that have been finally adjudicated or that arise out of the same subject matter and that could have been litigated in the prior action. Amstadt v. U.S. Brass Corp., 919 S.W.2d 644, 652 (Tex. 1996). Res judicata requires proof of the following elements: (1) a final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims that were raised or could have been raised in the first action. Id

A forcible detainer action is a special proceeding governed by Texas Property Code 24.002-008, and Texas Rules of Civil Procedure 510 (738-754, Repealed by Order of April 15, 2013, eff. Aug. 31, 2013). *Rice v. Pinney*, 51 S.W.3d 705; 2001 Tex. App. LEXIS 1831; *Kennedy v. Highland Hills Apartments*, 905 S.W.2d 325, 326 (Tex.App.-Dallas 1995, no writ). It was created to provide a speedy, simple, and inexpensive means for resolving the question of the right to possession of premises. Id. To preserve the simplicity and speedy nature of the

13

remedy, the applicable rule of civil procedure provides that "the only issue shall be as to the right to actual possession; and the merits of the title shall not be adjudicated." see Tex.R. Civ. P. 510; *Johnson v. Fellowship Baptist Church*, 627 S.W.2d 203, 204 (Tex.App.-Corpus Christi 1981, no writ).

The sole issue in a forcible detainer suit is who has the right to immediate possession of the premises. *Fandey v. Lee*, 880 S.W.2d 164, 168 (Tex.App.-EI Paso 1994, writ denied); *Cuellar v. Martinez*, 625 S.W.2d 3, 5 (Tex.Civ.App.-San Antonio 1981, no writ); *Johnson v. Highland Hills Drive Apartments*, 552 S.W.2d 493,495 (Tex.Civ.App.-Dallas 1977), writ ref'd n.r.e. per curiam, 568 S.W.2d 661 (Tex.1978).

The exclusive purpose of an FED action is to provide a person who is entitled to the immediate possession of real property a legal remedy (emphasis added), rather than force or violence, to gain possession of the property.

To prevail in a forcible detainer action pursuant to section 24.002 of the Texas Property Code, the plaintiff is not required to prove title but is only required to show sufficient evidence of ownership to demonstrate a superior right to immediate possession. *Ward v. Malone*, 115, S.W.3d 267, 270 (Tex.App.-Corpus Christi 2003, pet. Denied). For these reasons, a judgment of possession in a forcible detainer action is a determination only of the right to immediate possession and does not determine the ultimate rights of the parties to any other

14

issue in controversy relating to the realty in question. *Lopez v. Sulak*, 76 S.W.3d 597, 605 (Tex.App.-Corpus Christi 2002, no pet.). Therefore, an FED judgment is not a final judgment.

Consequently, an FED judgment inherently is not final and determines a time dependent issue (i.e., which party has the superior right to immediate possession). In other words, a subsequent FED action is not barred by res judicata, because the subsequent FED action does not meet the first and third prong of the res judicata test, even if only a single 3-Day notice was sent prior to filing both FED actions. The judgment is not final and the claims are different, i.e., the sole issue decided in an FED action, which party has the superior right to possession now, changes by the passage of time.

There is no rule requiring a landlord to necessarily send a separate 3-Day Notice prior to filing an FED. The holdings in Crawford and Puentes point out that each FED is a new and independent action, and, therefore, res judicata does not bar the filing of subsequent FED actions. However, as pointed out above, this is true even where a single notice is delivered prior to filing more than one FED action.

**Legal Injury Rule**

The limitations statute governing forcible detainer actions does not define the accrual date, and thus it falls to the courts to establish when such claims accrue. *Pustejovsky v. Rapid-American Corp.* 35 S.W.3d 643 (Sup. 2000); *Childs v.*

*Haussecker*, 974 S.W.2d 31 (Sup. 1998, rehearing overruled) (stating, "Because the accrual date for personal injury actions is not defined by statute of limitations, the courts are charged with the responsibility of articulating the rules governing accrual."); *Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430 (App. 2 Dist. 1997, rehearing overruled, review denied, rehearing of petition for review overruled) (stating "Determining what rule of accrual to apply is question of law"); Rogers v. Ricane Enterprises, Inc. (App. 7 Dist. 1996) 930 S.W.2d 157 , modified on rehearing, writ denied, rehearing of writ of error overruled) (stating, "Question of when cause of action accrues is judicial one to be determined with due regard to underlying statutory policy of repose, without, however, permitting unnecessary individual injustices.").

For limitations purposes, the general rule is that cause of action accrues when wrongful act effects injury. *Morriss v. Enron Oil & Gas Co.*, 948 S.W.2d 858 (App. 4 Dist. 1997); *Sullivan v. Bickel & Brewer*, 943 S.W.2d 477 (App. 5 Dist. 1995, writ denied, rehearing of writ of error overruled) (stating, "Accrual of limitations period occurs when facts come into existence authorizing claimant to seek judicial remedy.").

In this case, the Appellee did not suffer an injury until it sent the first 3-Day Notice to Vacate, September 23, 2011, and the Appellant refused to vacate, four days later, September 27, 2011. On that date, and not sooner, the Appellee could

file an FED Action. The Appellee's injury occurred when the Appellant did not comply with the September 23, 2011 Three-day Notice to Vacate. This conduct caused the injury and gave rise to the FED cause of action, because at this point in time all the elements of Texas Property Code 24.002 were satisfied. It was the Appellant's noncompliance with the September 23, 2011, Three-day Notice to Vacate that caused the injury and gave rise to the filing of all four FED actions. The legal status of the Appellants changed from tenant at sufferance to unlawful detainer and has not changed since.

The sending of additional notices did not change the legal status of the Appellants. From September 23, 2011 to date the Appellants have not surrendered possession to the Appellee. The fact that the Appellee demanded possession more than once did not change the legal status of the Appellant, nor were the additional notices necessarily mandatory prior to filing FED Actions 2, 3, and 4.

However, hypothetically, had the Appellee and Appellants entered an agreement, wherein the parties agreed that the Appellants could retain possession at will or for a term, the legal status of the Appellants would have changed. In this case, the SOL's would be cut off, and subsequently, if the Appellants defaulted on the agreement, and the Appellee sent the Appellants a demand to vacate and the Appellants refused, the SOL's would start anew. This hypothetical is inconsistent with the facts of this case.

17

However, this situation occurs in the rental cases. For example, if a tenant under a written lease defaults on the rent one month, the landlord sends a demand to vacate, and the tenant cures. At this point in time and circumstances, the legal status of the tenant has changed. He is no longer in default. The facts giving rise to a forcible detainer action are lacking. Therefore, the SOL's is cut off.

However, if the same tenant later defaults on rent, the landlord sends an appropriate demand to vacate, and the tenant does not cure, the legal status of the tenant has changed to an unlawful detainer. At this point in time and circumstances, the landlord suffers a new injury, giving rise to a new FED cause of action. If the legal status of the tenant effects a new injury, or recurring injury, the SOL's commences anew.

In the case of a tenant at sufferance who refuses the first demand to vacate, as in this case, the landlord cannot fairly assert he suffers a new injury because the unlawful detainer ignores subsequent notices. The legal status of the former tenant at sufferance changed to unlawful detainer upon refusing to surrender possession after the first demand to vacate, and the tenant's legal status of unlawful detainer did not change with delivery of each subsequent notice.

Note that subsequent notices do not cure the unlawful detainment, there is no agreement between the parties, and the injury suffered does not subside. The injury suffered by the landlord is that he is denied possession by the unlawful

detainer. Texas Civil Practices & Remedies Code 16.003 affords the landlord two years from the date of unlawful detainment to obtain possession by filing a forcible detainer action, regardless of how many FED actions filed within the two-year period. This construction of the statute is fair and reasonable.

An FED action is not a final judgment, res judicata does not bar refiling FED actions. An FED action is a special proceeding, cumulative of remedies available to the Appellee. At the end of two-year SOL, the Appellee has to invoke another legal remedy to obtain possession (e.g., trespass to try title, declaratory judgment action, writ of possession from district court). However, this construction of the statute allows an exception for rental cases, which are fundamentally different from the tenant at sufferance situation, as pointed out above.

In this case, FED4 was time barred by Civil Practice and Remedies Code 16.03 Two Year Limitation, because the Appellee filed FED4 November 6, 2013, over two years after September 27, 2011, the date the Appellants failed to comply with the September 23, 2011 notice effecting the injury, giving rise to an FED cause of action.

**Continuing Tort Rule**

A continuing tort involves wrongful conduct inflicted over a period of time that is repeated until desisted, and each day creates a separate cause of action. *Two Pesos, Inc. v. Gulf Ins. Co.*, 901 S.W.2d 495, 500 (Tex. App.-- Houston [14th

19

Dist.] 1995, no writ) (citing *Arquette v.Hancock*, 656 S.W.2d 627, 629 (Tex. App.--San Antonio 1983, writ ref'd n.r.e.)).

In determining whether there is a continuing tort, "care must be taken to distinguish between 1) repeated injury proximately caused by repetitive wrongful or tortious acts and 2) continuing injury arising from one wrongful act. While the former evinces a continuing tort, the latter does not." *Krohn*, 201 S.W.3d at 880; (quoting *Rogers*, 162 S.W.3d at 290). In this case, the Appellants were purportedly tenants at sufferance, who refused to comply with a Notice to Vacate ever since September 27, 2011. In this case, prior to September 27, 2011, the Appellants, occupancy were not unlawful. After that date the Appellants detained possession unlawfully ever since. With the passage of each day, and for that matter, the filing of each subsequent 3-Day notice to vacate and filing of FED action, a new injury did not occur.

After October 15, 2011, the Appellant's occupancy or possession was hostile and defiant. Their legal status changed to unlawful detainers. This state of affairs has not changed heretofore and gave rise to all four of the Appellee's FED Actions. The September 23, 2011 Notice and the Appellants' noncompliance with it inflicted an injury on the Appellee, and was required for the Appellee to file all four FED actions (although FED4 is time barred). Subsequent notices to vacate were superfluous.

20

## ISSUE 2

**Whether the courts have defined the accrual of action in a limitation case.**

The accrual of action is a question of law and therefore must be determined not as a fact issue, but as a legal issue.

In order to determine the legal date on which the action accrues, two cases are very revealing as to the thought process behind the question.

In *Hickey v. Huntington National Bank, No. 01-12-00670-CV,* (Tex.App.-Houston [1 st Dist.] (2013)), the Court had a controversy very much like the one presented here.

The Hickeys claimed that Huntington Bank could not foreclose on their property as Huntington was barred by the four year statute of limitations. The Hickeys were presented with a notice of default and notice to cure on January 12, 2004. The Hickey's cured the default by paying the requested amount and catching up with payments.

In 2011, the bank noticed the Hickeys that they were in default and the note was accelerated. In response, Hickeys sent letters to the bank noticing that the cause of action for foreclosure accrued in 2004, and the Bank was barred from foreclosure by the 4 year statute of limitations. Hickey argued that the first notice to accelerate the note, sent in 2004, triggered the limitation time and continued to

run until 2011. The court determined that there was no acceleration of the note in 2004, therefore the accrual of action was not triggered.

In making its determination, the Houston court relied heavily on a Texas Supreme court opinion issued in 2001, namely, *Holy Cross Church of God in Christ v. Wolf,* 44 S.W.3d 562, 566 (Tex.2001). This is one of the seminal cases in Texas on accrual of action.

*The Hickey* court quoted *Holy Cross:*

"A sale of real property under a power of sale in a mortgage or deed of trust that creates a real property lien must be made not later than four years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE ANN. § 16.035(b) (West 2002). When this four-year statute of limitations expires, the real-property lien and the power of sale to enforce the lien become void. *Id,* § 16.035(d). If "a note or obligation payable in installments is secured by a real property lien, the four-year limitations period does not begin to run until the maturity date of the last . . . installment." *Id.* § *16.035(e).* Section 16.035 modifies the general rule that a claim accrues and limitations begins to run on each installment when it becomes due."

This is exactly analogous to the question before this Court. In a two year statute of limitations for forcible detainer, does the Notice to Vacate trigger the two year statute? Yes. Can the two year statute be triggered after each and

every Notice to Vacate? No. That would be analogous to "a claim accrues and limitations begin to run on each installment when it becomes due." Once a party has suffered the legal injury of a refusal to vacate, (the fourth day after notice is delivered), is it even necessary to send another notice to vacate before filing a forcible detainer action? Again, the answer is no. Once the party has a right to take legal recourse, it does not lose that right until it perseveres in a court action or the statute of limitations expires. It is only logical that if each installment due does not restart the statute of limitations, certainly each additional notice to vacate would not restart the clock.

Appellant has conclusively proved when the first Notice to Vacate was sent. Appellant has conclusively proved that the notice was sent two years before the filing of the forcible detainer which is before the court at the present time.

A reading of the *Holy Cross* opinion will reiterate that in the four year statute of limitation, the accrual was triggered by the maturity date of the last note, obligation, or installment. In other words, if the time to foreclose was not executed before four years from the payment of the last note, obligation, or installment, the party was barred by limitations.

In this instance, the two year statute begins to run when the Notice to vacate is ignored. The party who sent the notice has two years from that date to evict and after

the two years is barred from eviction.

The Austin Courts have interpreted that the statute of limitations is triggered each and every time a Notice to Vacate is delivered. Appellant notices the Court that proceedings in a justice court are not res judicata and nothing but time, (the two year limitation) stops a party from sending a notice and filing a forcible detainer over and over. If that were the case, there would be no need for a statute of limitations, because the party with the legal injury could file a forcible detainer forever or until the Court yields to his continuous bombardment.

The two year statute of limitations has been law in Texas since 1841. If it was of no effect and no limitation was ever triggered, why has that statute been on the books for almost two centuries?

## PRAYER

Appellant prays that this en banc Court review the law year statute of limitations and accrual of action and after due consideration, reverse and render.

Date: April 24, 2015

Respectfully submitted,

/s/ JAMES MINERVE
James Minerve
State Bar No. 24008692
115 Saddle Blanket Trail
Buda, Texas 78610
(210) 336-5867
(888) 230-6397 (Fax)
Attorney for Appellant Nemer Massaad

24

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was sent to the Appellee in accordance with the Texas Rules of Civil Procedure on this 24th day of April 2015:

Mackie Wolf Zientz & Mann, P.C.
Mark D. Cronenwett
State Bar No. 00787303
Parkway Office Center, Ste 900
14160 North Dallas Parkway
Dallas, Texas *75254*

*/s/* James Minerve

_____

James Minerve


## CERTIFICATE OF COMPLIANCE

Because this brief contains 5,074 words, excluding the parts of the brief exempted by Tex. R. App. P. 9.4(1)(2), Appellant has simultaneously filed a Motion to Exceed Word Number Limitation that is required per Tex. R. App. P. 9.4(i)(2)

/s/ James Minerve

_____

James Minerve

## CERTIFICATE OF CONFERENCE

On April 23, 2015, I attempted to confer with Mark D. Cronenwett as to the filing of this Motion for Rehearing En Banc. I spoke with NIT. Cronenwett but he neither opposed nor agreed.

/s/ James Minerve

James Minerve

# Appendix

1. Travis County Court at Law Number One Judgment.


2. Texas Civil Practice and Remedies Code § 16.00

3. *Holy Cross Church of God in Christ v. Wolf,* 44 S.W.3d 562, 566 (Tex.2001).

CAUSE NO. C-1-CV-14-000401

| | | |
|---|---|---|
| WELLS FARGO BANK, NATIONAL ASSOCIATION AS TRUSTEE FOR OPTION ONE MORTGAGE LOAN TRUST 2006-3, ASSET-BACKED CERTIFICATES, SERIES 2006-3 | § § § § § § | IN THE COUNTY COURT |
| | § § | AT LAW NUMBER ONE |
| vs. | § § | |
| NEMER MASSAAD and ALL OCCUPANTS OF 2408 WILMA RUDOLPH RD, AUSTIN, TX 78748 Defendant(s) | § § § § § | TRAVIS COUNTY, TEXAS |



## JUDGMENT FOR POSSESSION OF PROPERTY

After due notice to the parties named above, the Court called this case for trial on the date of this Judgment. Based upon the evidence presented at that time, the Court finds that it has jurisdiction of the parties and the subject matter of this action in forcible detainer. The Court further finds from evidence that the following Judgment should be entered.

THEREFORE, IT IS ORDERED that WELLS FARGO BANK, NATIONAL ASSOCIATION AS TRUSTEE FOR OPTION ONE MORTGAGE LOAN TRUST 2006-3, ASSET-BACKED CERTIFICATES, SERIES 2006-3, ("Plaintiff") is hereby granted possession of the property at issue ("Property") that is commonly know as 2408 WILMA RUDOLPH RD, AUSTIN, TX 78748 and more particularly described as:

LOT 19, BLOCK E, OLYMPIC HEIGHTS SECTION 2, A SUBDIVISION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN DOCUMENT NUMBER 200200216 OF THE PLAT RECORDS OF TRAVIS COUNTY, TEXAS..

Defendants, duly cited, appeared/~~failed to appear~~.

IT IS FURTHER ORDERED that a Writ of Possession of the Property shall issue in favor of Plaintiff as allowed by law. *Bond on appeal set at $6000.*

All relief not expressly granted is DENIED.

SIGNED this 21 day of March, 2014.

_____
JUDGE PRESIDING


000849365

155

# IN THE SUPREME COURT OF TEXAS

No. 00-0250

Holy Cross Church of God in Christ, Petitioner

v.

Johnny Wolf, Respondent

On Petition for Review from the

Court of Appeals for the Twelfth District of Texas

Argued on December 6, 2000

Justice Baker delivered the opinion of the Court. Justice Hankinson did not participate in this decision.

We decide two issues in this case: (1) whether a noteholder must take affirmative steps towards foreclosure, in addition to serving a debtor with notice of acceleration, to effectively accelerate a note secured by real property and thereby trigger limitations; and (2) whether the Texas four-year or the federal six-year statute of limitation applies to the noteholder's claim in this case.

Holy Cross Church of God in Christ sued Johnny Wolf seeking a declaratory judgment that the Texas four-year limitations statute barred Wolf's foreclosure of the Church's property. The trial court granted the Church summary judgment on that ground. The court of appeals held that an optional acceleration clause cannot be effectively exercised without the

noteholder's taking specific affirmative steps towards foreclosure. Because the Church did not present summary-judgment evidence that Wolf's predecessor had taken these affirmative steps, the court of appeals reversed the summary judgment, concluding that the Church did not carry its burden of proving conclusively when Wolf's cause of action accrued. For this reason, the court did not reach the question of whether the four-year or six-year statute of limitations applied.

We hold that, absent evidence of abandonment or a contrary agreement between the parties, a clear and unequivocal notice of intent to accelerate and a notice of acceleration is enough to conclusively establish acceleration and therefore accrual. Thus, we conclude the Church did conclusively prove when the Church's note was accelerated, and consequently, when Wolf's cause of action accrued. We also conclude that the Texas four-year limitations period applies here. We hold that the FDIC's six-year limitations period only enures to a subsequent noteholder's benefit if a claim accrues on the note before the FDIC transfers the note. Accordingly, we reverse the court of appeals' judgment and render judgment for the Church.

# I. BACKGROUND

In June 1987, Holy Cross Church executed a $140,000, twenty-year promissory note payable to Wynnewood Bank and secured by a deed of trust on its South Dallas church property. Wynnewood Bank failed and Continental Bank succeeded it. Continental Bank also eventually failed and the Federal Deposit Insurance Corporation (FDIC) became its receiver and holder of the Church's note. While the FDIC held the Church's note, the Church could not make its $1,640.20 monthly payment but paid $500 a month to show good faith. The FDIC and the Church agreed to settle the note for $75,000. The Church was unable to pay this amount on the due date. However, even though the Church remained in default, the FDIC did not accelerate the note. The FDIC then sold the note to Mortgage Investment Trust Corporation (MITC).

On July 15, 1994, MITC sent the Church a notice of default and intent to accelerate. On August 15, and again on September 8, MITC sent the Church letters indicating it had accelerated the note. Both letters specified dates for nonjudicial foreclosure sales. But MITC never actually foreclosed and the Church did not resume payments. On August 1, 1995, MITC sold the note to Great Plains Capital Corporation. Finally, on February 2, 1998, Great Plains sold the note to Johnny Wolf.

On February 23, 1998, Wolf's attorney sent the Church a letter informing it that Wolf now owned the note and that the note was in default. On July 29, Wolf's attorney sent another letter stating that the "maturity of the aforesaid note has occurred and full payment of the balance of same is now due and owing." On September 11, Wolf's attorney sent a notice of foreclosure on the promissory note explaining a foreclosure sale was scheduled for October 6. On the sale date, a trial court granted the Church a temporary injunction to prevent the sale. Nevertheless, the trustee held the sale and Wolf purchased the property.

The Church sued Wolf for a declaratory judgment that the foreclosure sale was void because limitations barred Wolf's foreclosure. The Church also pleaded wrongful foreclosure, unjust enrichment, and constructive trust but later nonsuited these claims without prejudice. The parties then agreed to a temporary injunction. Subsequently, the Church moved for summary judgment, arguing that MITC's August 15, 1994, demand and acceleration triggered the limitations period on Wolf's claim. Thus, the Church argued, limitations had run on August 15, 1998, almost two months before the foreclosure sale.

In response, Wolf agreed that limitations began to run on August 15, 1994. However, he argued that because the FDIC had once owned the note, the six-year limitations period afforded federal receivers applied rather than the Texas four-year period. He filed a cross-motion for summary judgment, contending that limitations did not bar the foreclosure because the federal statute applied. He also argued the Church lacked standing to sue, but he abandons that argument here. See Tex. R.

App. P. 74(f). The trial court granted the Church's summary-judgment motion on limitations grounds, declared the Church's obligations under the deed and note time-barred, declared the sale void, and ordered the Church vested with fee simple title to the property.

Wolf appealed, arguing that the six-year federal limitations period governed his claim. The court of appeals did not reach the limitations issue. Instead, the court concluded that a fact question existed about when Wolf's claim accrued. Thus, it held that the trial court erroneously granted the Church's motion and reversed and remanded the claims. ___ S.W.3d at ___.

# II. APPLICABLE LAW

## A. Summary Judgment—standard of Review

A party moving for summary judgment must conclusively prove all elements of its cause of action or defense as a matter of law. Tex. R. Civ. P. 166a(c); *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). When both sides move for summary judgment and the trial court grants one motion but denies the other, the reviewing court should review both sides' summary judgment evidence, determine all questions presented, and render the judgment that the trial court should have rendered. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). A party moving for summary judgment on limitations grounds must prove when the cause of action accrued. *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex. 1990).

## B. Accrual

By statute, if a series of notes or obligations or a note or obligation payable in installments is secured by a lien on real property, limitations does not begin to run until the maturity date of the last note, obligation, or installment. Tex. Civ. Prac. & Rem. Code § 16.035(e); *Swedlund v. Banner*, 970 S.W.2d 107, 111 (Tex. App.—Corpus Christi 1998, pet. denied). Section 16.035 modifies the general rule that a claim accrues and limitations begins to run on each installment when it becomes due. *See Palmer v. Palmer*, 831 S.W.2d 479, 481-82 (Tex. App.—Texarkana 1992, no writ).

If a note or deed of trust secured by real property contains an optional acceleration clause, default does not ipso facto start limitations running on the note. Rather, the action accrues only when the holder actually exercises its option to accelerate. *Hammann v. H.J. McMullen & Co.*, 62 S.W.2d 59, 61 (Tex. 1933); *Curtis v. Speck*, 130 S.W.2d 348, 351 (Tex. Civ. App.—Galveston 1939, writ ref'd). Effective acceleration requires two acts: (1) notice of intent to accelerate, and (2) notice of acceleration. *See Shumway v. Horizon Credit Corp.*, 801 S.W.2d 890, 892 (Tex. 1991); *Ogden v. Gibraltar Sav. Ass'n*, 640 S.W.2d 232, 233 (Tex. 1982). Both notices must be "clear and unequivocal." *Shumway*, 801 S.W.2d at 893. Even when a noteholder has accelerated a note upon default, the holder can abandon acceleration if the holder continues to accept payments without exacting any remedies available to it upon declared maturity. *City Nat'l Bank v. Pope*, 260 S.W. 903, 905 (Tex. Civ. App.—San Antonio 1924, no writ); *see also San Antonio Real Estate, Bldg. & Loan Ass'n v. Stewart*, 61 S.W. 386, 388 (Tex. 1901) (explaining that the parties' agreement or actions can "have the effect of obviating the default and restoring the contract to its original condition as if it had not been broken"); *Denbina v. City of Hurst*, 516 S.W.2d 460, 463 (Tex. Civ. App.—Tyler 1974, no writ) (explaining that an option to accelerate may be withdrawn or revoked after it is exercised by the noteholder, effectively restoring the note's original maturity date).

Federal law provides a different scheme for determining accrual of foreclosure actions brought by the FDIC. The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA) provides that limitations on FDIC claims begins to run on the later of (1) the date the FDIC is appointed receiver, or (2) the date the cause of action accrues.

12 U.S.C. § 1821(d)(14)(B).

## C. Limitations

Under state law, a sale of real property under a power of sale in a mortgage or deed of trust that creates a real-property lien must be made not later than four years after the day the cause of action accrues. Tex. Civ. Prac. & Rem. Code § 16.035(b); *McLemore v. Pacific Southwest Bank*, 872 S.W.2d 286, 292 (Tex. App.--Texarkana 1994, writ dism'd by agr.). When this four-year period expires, the real-property lien and the power of sale to enforce the lien become void. Tex. Civ. Prac. & Rem. Code § 16.035(d). This four-year limitations period can be suspended by filing a written agreement in the county clerk's office where the real property is located. Tex. Civ. Prac. & Rem. Code § 16.036.

Federal law provides a different limitations period for FDIC foreclosure actions. FIRREA provides that when the FDIC brings a contract action as a conservator or receiver, the statute of limitations is the longer of (1) the 6-year period beginning on the date the claim accrues, or (2) the statute of limitations under state law. 12 U.S.C. § 1821(d)(14)(A)(i). While FIRREA's express terms only grant this six-year limitations period to the FDIC, we have held that the FDIC's successors in interest are entitled to the benefit of this longer period when the claim had already accrued before the FDIC received the note. *Jackson v. Thweatt*, 883 S.W.2d 171, 174 (Tex. 1994).

## III. ANALYSIS

The court of appeals did not reach the limitations issue because it concluded that the Church had not conclusively established the date Wolf's claim accrued. Accordingly, we consider that question first.

## A. Accrual

Under its terms, the Church's note would mature in June 2007, the month the last installment was due. *See* Tex. Civ. Prac. & Rem. Code § 16.035(e). The Church claims, and Wolf agreed, that MITC's August 15, 1994, letter accelerated this maturity date. The parties also agreed that, upon this acceleration, any cause of action for unpaid amounts accrued, thereby triggering limitations under both state and federal law.

The court of appeals correctly noted that when a cause of action accrues is a question of law, not fact. *See Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990). It then concluded that the parties' agreement about the acceleration and accrual date was an impermissible attempt to stipulate to a legal question. The court explained that it was incumbent upon the Church to prove the actual accrual date rather than rely on the parties' agreement. Because it determined that the Church had not carried this burden, the court of appeals reversed the trial court's summary judgment for the Church and remanded the case for further proceedings. ___ S.W.3d at ___.

The Church argues that the court of appeals violated Rule 166a(c) by reversing summary judgment on grounds other than those presented in the trial court. *See* Tex. R. Civ. P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993). The Church also argues that the court of appeals erred in holding that it did not present summary-judgment evidence conclusively establishing that the note was accelerated on August 15, 1994, and that limitations began running on that date.

Wolf responds by arguing that the trial court's recognition during the summary-judgment hearing that "everybody seems to agree" on the accrual date establishes that the issue was before the trial court and thus the court of appeals could review it. He also contends that the court of appeals correctly held that the Church did not establish the accrual date, and that, in

fact, the record shows that MITC's attempted August 1994 acceleration was ineffective or abandoned.

We disagree with the court of appeals' analysis and hold that the parties' agreement about the acceleration date and the summary-judgment evidence each provide independent bases for the trial court to find the Church had conclusively established an accrual date. While accrual is a legal question, whether a holder has accelerated a note is a fact question to which parties may, and in this case did, agree. *See, e.g., McLemore*, 872 S.W.2d at 291 (treating whether "note was accelerated, and when" as fact question); *Texas Airfinance Corp. v. Lesikar*, 777 S.W.2d 559, 563 (Tex. App.--Houston [14th Dist.] 1989, no writ) (treating whether promissory note had been accelerated as fact question).

"Assertions of fact, not plead in the alternative, in the live pleadings of a party are regarded as formal judicial admissions." *Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983). A judicial admission that is clear and unequivocal has conclusive effect and bars the admitting party from later disputing the admitted fact. *Gevinson v. Manhattan Constr. Co.*, 449 S.W.2d 458, 467 (Tex. 1969). Here, Wolf's summary-judgment response and counter-motion for summary judgment states: "Defendant accepts Plaintiff's argument that the note was accelerated by the [sic] MITC on August 15, 1994, and that the statute of limitations began to run on that date." And at the summary-judgment hearing and in his court of appeals' brief Wolf consistently agreed that MITC accelerated the Church's note on August 15, 1994. Wolf's agreement amounted to a judicial admission of the acceleration date. Once Wolf's judicial admission established the acceleration date, the trial court could apply the law to conclude as a matter of law that accrual occurred upon this acceleration and that limitations then began running.

And, even without Wolf's admission, the summary-judgment evidence conclusively establishes an August 15, 1994, accrual. The Church's summary-judgment evidence included: (1) a copy of the deed of trust containing optional acceleration and power of sale clauses in favor of the original mortgagee and its successors and assigns; (2) documents tracing the note's ownership from Wynnewood bank to each successor, including MITC and Wolf; and (3) a July 15, 1994, notice of intent to accelerate and an August 15, 1994, notice of acceleration signed by MITC's attorneys.

The court of appeals held that this evidence was not enough to establish effective acceleration, or, in the alternative, that MITC had abandoned acceleration:

MITC was required to serve the Church with written notice of the sale, post written notice at the courthouse door for twenty-one days, and file a copy of the notice with the county clerk. There is no evidence in the record that MITC posted the property for sale or filed the notice with the county clerk. There is nothing in the record stating that MITC actually conducted a foreclosure sale. Accordingly, based on the record before us, it appears that, although the Church was in default and MITC served the Church with notice of a sale, MITC did not comply with the contractual or statutory conditions necessary to exercise its option to accelerate the note as declared. Apparently, MITC abandoned the note acceleration.

___ S.W.3d at ___ (citations omitted). We disagree.

### 1. Acceleration

In holding that MITC's acceleration was ineffective, the court of appeals concluded that an optional acceleration clause cannot be exercised without actually taking steps towards foreclosing on the property. It relied on section 51.002 of the Texas Property Code and *Swoboda v. Wilshire Credit Corp.*, 975 S.W.2d 770 (Tex. App.--Corpus Christi 1998, pet. denied).

Section 51.002 establishes the procedures for conducting a foreclosure sale. The court of appeals held that MITC could not have accelerated the Church's note without following section 51.002's posting and notice procedures. In other words, the court held that the cause of action on the Church's note could not have accrued absent compliance with section 51.002. However, section 51.002 has nothing to do with accrual or limitations; it only governs the procedures noteholders must follow *if* they choose to exercise their power of sale. Rather, section 16.035 of the Texas Civil Practice and Remedies Code governs accrual, and it provides that a cause of action accrues and limitations begins to run from an installment

note's maturity date.

*Swoboda* holds that:

Exercise of the right of acceleration requires the mortgagee to make a clear, positive, and unequivocal declaration in some manner of the exercise thereof, *followed by* affirmative action towards enforcing the declared intention . . . . [A] declaration alone does not amount to an election to accelerate without accompanying enforcement action, *i.e.*, steps to execute foreclosure on the real property.

975 S.W.2d at 776 (citations omitted). Several other cases have likewise required affirmative steps towards foreclosure to accelerate a note secured by real property. *E.g., Shepler v. Kubena*, 563 S.W.2d 382, 385 (Tex. Civ. App.--Austin 1978, no writ) ("Intention to mature the note may be evidence[d] by declarations, which alone do not amount to an election, unless followed by affirmative action toward enforcing the declared intention."); *National Debenture Corp. v. Smith*, 132 S.W.2d 426, 431 (Tex. Civ. App.--Galveston 1939, writ dism'd judgm't cor.) ("[D]eclaration alone does not amount to an election to accelerate the maturity; . . . to be effective as such, it must be followed by affirmative action toward enforcing the declared intention."); *cf. Joy Corp. v. Nob Hill N. Props., Ltd.*, 543 S.W.2d 691, 694-95 (Tex. Civ. App.--Tyler 1976, no writ) (holding acceleration may be accomplished by *either* declaring entire debt due *or* taking some other unequivocal action indicating debt is accelerated).

We disapprove of *Swobada* and this line of cases to the extent they can be read to require affirmative action towards foreclosure to trigger acceleration of a note secured by real property when the parties' agreement does not require such action. To hold, as the court of appeals did here, that acceleration does not occur and thus an action does not accrue until a foreclosure posting or sale takes place would, in essence, mean the foreclosure posting or sale would be the triggering event bringing about the right to hold a foreclosure sale. This result is nonsensical.

### 2. Abandonment

The court of appeals alternatively held that MITC abandoned its attempted acceleration. However, as the court of appeals noted, it "is undisputed that the Church did not pay the balance or any portion thereof, or resume making regular payments or in any way change its position." __ S.W.3d at __. And Wolf has not argued that MITC or its successors had otherwise expressed an intent to abandon acceleration. Thus, abandonment is not implicated in this case.

Both MITC's notice of intent to accelerate and its notice of acceleration were "clear and unequivocal." *See Shumway*, 801 S.W.2d at 893. Because there is no evidence of abandonment, these notices established MITC's acceleration. Accordingly, we conclude that the Church presented conclusive evidence that MITC accelerated the Church's note on August 15, 1994. The trial court correctly held that any cause of action on the note accrued on that date and that limitations then began to run. Thus, the court of appeals erred in holding that a fact issue existed about when MITC's action accrued.

### B. Limitations

Wolf foreclosed on the Church's property on October 6, 1998. Because Wolf's action accrued August 15, 1994, we must decide whether the state four-year or federal six-year statute of limitations governs his right to foreclose.

Wolf urges us to hold that, as a FDIC successor, he is entitled to FIRREA's six-year limitations period. *See Jackson*, 883 S.W.2d at 178 (applying six-year FIRREA limitations period to FDIC successor in interest where cause of action accrued before FDIC received the note). He recognizes that two federal courts have refused to extend FIRREA's limitations to FDIC successors when the notes were not in default until after the notes left the FDIC's hands. *See Beckley Capital Ltd. P'ship v. DiGeronimo*, 184 F.3d 52, 58 (1st Cir. 1999) ("[T]he assignee does not get this benefit where an obligation is transferred by the FDIC before it is in default."); *Cadle Co. v. 1007 Joint Venture*, 82 F.3d 102, 105 (5th Cir. 1996) ("We agree with Joint Venture that an assignee of the FDIC can invoke FIRREA's six-year period of limitations only if the note at issue was in default either before the FDIC acquired it or while the FDIC owned it."). However, he argues that because the Church's note *was* in default while in the FDIC's hands, he should receive the benefit of the six-year limitations

period.

Conversely, the Church argues that the state four-year limitations period applies in this case. It contends that the relevant question is not whether the note was in default while the FDIC held it, but whether a cause of action had accrued before the FDIC transferred the note to a subsequent holder, thereby triggering limitations. It reasons that applying FIRREA's limitations period when a cause of action does not accrue until *after* the FDIC transfers the note does nothing to further FIRREA's policies.

## 1. FIRREA

FIRREA's relevant section provides:

- Statute of limitations for actions brought by conservator or receiver.

(A) In general

Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be--

(i) In the case of any contract claim, the longer of--

(I) the 6-year period beginning on the date the claim accrues; or

(II) the period applicable under State law;

. . . .

(B) Determination of the date on which a claim accrues

For purposes of subparagraph (A), the date on which the statute of limitations begins to run on any claim described in such subparagraph shall be the later of--

(i) the date of the appointment of the Corporation as conservator or receiver; or

(ii) the date on which the cause of action accrues.

12 U.S.C. § 1821(d)(14). FIRREA does not expressly extend the benefit of this expanded limitations period to the FDIC's successors in interest. However, most jurisdictions have recognized, based on different theories, that the FDIC's successors do enjoy the benefit of the six-year period in some circumstances. *See, e.g., UMLIC-Nine Corp. v. Lipan Springs Dev. Corp.,* 168 F.3d 1173, 1177 n.3 (10th Cir. 1999); *United States v. Thornburg,* 82 F.3d 886, 891-92 (9th Cir. 1996); *FDIC v. Bledsoe,* 989 F.2d 805, 810 (5th Cir. 1993); *Tivoli Ventures, Inc. v. Bumann,* 870 P.2d 1244, 1246 (Colo. 1994); *Cadle Co. II, Inc. v. Lewis,* 864 P.2d 718, 724 (Kan. 1993); *N.S.Q. Assocs. v. Beychok,* 659 So. 2d 729, 734 (La. 1995); *Investment Co. of the Southwest v. Reese,* 875 P.2d 1086, 1095 (N.M. 1994); *Union Recovery Ltd. P'ship v. Horton,* 477 S.E.2d 521, 524 (Va. 1996). And we so held in *Jackson v. Thweatt,* the case upon which Wolf relies. 883 S.W.2d at 178.

The question we did not answer in *Jackson,* however, is the one presented here--whether the FDIC's successors enjoy the benefit of the six-year limitations period when a cause of action on the note has not accrued before the FDIC assigns the note to a subsequent holder. We agree with the Church that the policy justifications we cited for extending limitations in *Jackson* do not apply here. Thus, we join the two federal courts that have considered this issue and hold that the FDIC's

successors do not receive the benefit of the FDIC's six-year limitations period if the cause of action does not accrue until after the note leaves the FDIC's hands.

### 2. *Jackson v. Thweatt*

In *Jackson*, we considered two conflicting court of appeals opinions about whether FIRREA's six-year limitations period applies to the FDIC's successors in interest. 883 S.W.2d at 172-74. In both cases the noteholders' claims had accrued before the FDIC became the receiver of the noteholders. *Jackson*, 883 S.W.2d at 172-74. We recognized that 18 U.S.C. § 1821(d)(14) expressly confers the six-year limitations only on actions the FDIC brings. *Jackson*, 883 S.W.2d at 174. However, based on the common law maxim that "[a]n assignee stands in the shoes of his assignor," we held that the FDIC's successors also have the benefit of the FDIC's longer limitations period. *Jackson*, 883 S.W.2d at 174. Any other holding, we explained, would diminish the note's market value in the hands of the FDIC, thereby hindering the purpose behind the longer limitations period:

To hold that assignees are relegated to the state statute of limitations would serve only to shrink the private market for the assets of failed banks. It would require the FDIC to hold onto and prosecute all notes for which the state statute of limitations has expired because such obligations would be worthless to anyone else. This runs contrary to the policy of allowing the FDIC to rid the federal system of failed bank assets. The FDIC can only make full use of the market in discharging its statutory responsibilities if the market purchasers have the same rights to pursue actions against recalcitrant debtors as does the FDIC.

*Jackson*, 883 S.W.2d at 174 (quoting *Fall v. Keasler*, 1991 WL 340182, at *4 (N.D. Cal. Dec. 18, 1991)).

While we have never considered whether the result we reached in *Jackson* would compel extending FIRREA's limitations if the cause of action accrued after the note left the FDIC's hands, two federal circuit courts have declined to extend limitations in such a situation. *See DiGeronimo*, 184 F.3d at 58; *Cadle Co.*, 82 F.3d at 105.

### 3. *Cadle Company v. 1007 Joint Venture*

In *Cadle Company*, the Fifth Circuit first considered whether FIRREA's six-year limitations period enured to the benefit of a FDIC successor when the note was not in default until *after* the FDIC transferred it. 82 F.3d at 104-05. It held "that an assignee of the FDIC can invoke FIRREA's six-year period of limitations only if the note at issue was in default either before the FDIC acquired it or while the FDIC owned it." *Cadle Co.*, 82 F.3d at 105. While the court spoke in terms of "default" rather than "accrual," its analysis treated the concepts as synonymous:

FIRREA's six-year period of limitations has no significance independent of a claim to which it applies; it attaches only to an accrued claim, not to a performing note. . . . The six-year period is not triggered by the FDIC's appointment as receiver; rather, it becomes relevant only upon the accrual of a cause of action, at which time it identifies the starting date for the six-year period. Until there is a default, there is no claim . . . .

*Cadle Co.*, 82 F.3d at 105. The court recognized the policies behind extending the six-year period to transferees, but noted that this "reasoning loses force with a note performing when the FDIC transfers it; because such a note is not in default, it has value to a prospective transferee and no limitation period is running." *Cadle Co.*, 82 F.3d at 106. Thus, it distinguished these facts from its previous cases holding that the six-year period applies to the FDIC's successors in interest. *See, e.g., Bledsoe*, 989 F.2d at 810-11.

### 4. *Beckley Capital Limited Partnership v. DiGeronimo*

In *DiGeronimo*, the First Circuit considered whether FIRREA's six-year limitations period applied to expand a state

statute of limitations requiring that suit be brought against an estate within one year after a decedent's death. 184 F.3d at 55. DiGeronimo guaranteed a note that was in default while the FDIC held it. *DiGeronimo*, 184 F.3d at 54. The FDIC later sold the note to Beckley Capital and DiGeronimo died a month later. *DiGeronimo*, 184 F.3d at 58. Because the note was already in default when the FDIC transferred the note, Digeronimo was already subject to suit as guarantor while the FDIC held the note. Despite this, the court refused to extend the statute of limitations:

[T]he one-year New Hampshire statute [for bringing suit against an estate] had not begun to run at the time of the transfer because Beckley acquired the note and the guaranty in June 1994 and DiGeronimo did not die until July 1994. Accordingly, Beckley had the same one-year period to sue as any other person (apart from the FDIC) who happened to have a claim against a New Hampshire decedent. And because Beckley acquired the guaranty before this period even began to run, its position is closely analogous to the assignee in *Cadle* that acquired its note prior to the default. Put differently, there is no reason why a special statute of limitations is needed in this case to make the obligation marketable to a purchaser, and absent such a reason, the policy behind state statutes of limitation--vivid in this case--ought to be respected.

*DiGeronimo*, 184 F.3d at 58. The court expressly "adopt[ed] the principle in *Cadle* that the assignee does not get this benefit where an obligation is transferred by the FDIC *before* it is in default." *DiGeronimo*, 184 F.3d at 58 (emphasis added). And, as the *Cadle* court had done, the First Circuit discussed default and accrual as synonymous concepts.

### 5. Analysis

In response to the huge number of bank failures in 1987 and 1988, FIRREA was enacted to "strengthen the enforcement power of [f]ederal regulators of depository institutions." Boteler, *Comment: Protecting the American Taxpayers: Assigning the FDIC's Six Year Statute of Limitations to Third Party Purchasers*, 24 Tex. Tech L. Rev. 1169, 1169-71 (1993). The six-year limitations period was created because "once the FDIC is appointed receiver, it needs extra time to review all of the assets and liabilities it has just acquired, before it can go forward with any litigation by which to recover on defaulted promissory notes." Boteler, *supra* at 1078.

Two justifications are generally cited to support extending FIRREA's six-year period to FDIC's successors in interest even though FIRREA is silent about assignees. First, absent such an exception, the FDIC would be forced to prosecute all notes where state limitations has already run. *See, e.g., Bosque Asset Corp. v. Greenberg*, 19 S.W.3d 514, 521 (Tex. App.--Eastland 2000, pet. denied) ("[T]he federal policy of insuring a market for the assets of failed depositories militates strongly in favor of extending the federal statute of limitations to all subsequent assignees of the FDIC."); *see also Tivoli Ventures, Inc.*, 870 P.2d at 1250 ("Requiring the FDIC to prosecute each outstanding loan would . . . unduly delay the transfer and sale of the insolvent bank's assets."). Interpreting FIRREA to require the FDIC to prosecute all notes where the state statute of limitations had run would be contrary to the policies behind FIRREA's enactment. *See generally Jackson*, 883 S.W.2d at 174.

The second justification cited for extending FIRREA's limitations period to its successors is the premise that "[a]n assignee stands in the shoes of his assignor." *General Fin. Servs., Inc. v. Practice Place, Inc.*, 897 S.W.2d 516, 520 (Tex. App.--Fort Worth 1995, no writ). This maxim supports the notion that the FDIC's right to an extended limitations period is part of the bundle of rights that transfers to its subsequent assignees. *See, e.g., Bledsoe*, 989 F.2d at 810. *But see WAMCO, III, Ltd. v. First Piedmont Mortgage Corp.*, 856 F. Supp. 1076, 1087-88 (E.D. Va. 1994) (holding common law assignment theories do not support extending FIRREA limitations to assignees). We cited both justifications for our holding in *Jackson*. 883 S.W.2d at 174.

However, while these policies justify extending the six-year limitations period when a cause of action has accrued before the FDIC transfers the note, we agree with the First Circuit that "[n]o reason exists to extend this special benefit beyond the point where it serves the federal policy; and it does not do so here." *DiGeronimo*, 184 F.3d at 57. When a cause of action has not accrued before the FDIC transfers the note, a transferee has the same four years under section 16.035(b) of the Texas Civil Practice and Remedies Code to sue as any other person. Accordingly, refusal to extend limitations in this

situation does not significantly impact the FDIC's notes' marketability.

Moreover, even though an assignee generally "stands in the shoes of his assignor," *Bledsoe*, 989 F.2d at 810, the Fifth Circuit aptly explained why that concept would not apply here, where a claim has not accrued and thus the FDIC's right to a six-year limitations period is never triggered. "FIRREA's six-year period of limitations has no significance independent of a claim to which it applies; it attaches only to an accrued claim, not to a performing note." *Cadle Co.*, 82 F.3d at 105. We agree. Absent application of FIRREA's statute of limitations, a noteholder's right to sue is limited by section 16.035(b). The six-year provision does not "attach" to the bundle of rights passed to subsequent assignees unless FIRREA's express terms actually trigger the right.

Wolf recognizes that the *Cadle* and *DiGeronimo* courts refused to extend FIRREA's limitations when the notes were not in default until after the FDIC transferred the notes. However, he argues that their reasoning cannot apply here because it is undisputed that the Church's note *was* in default in the FDIC's hands. We disagree. While *Cadle* and *Beckley* do use the term "default" as the triggering event for determining whether FIRREA's limitations period is extended, it is clear from their reasoning that these courts rely on the default date only to the extent that *it was synonymous* with the accrual date in those cases. However, under Texas law we look to the accrual date as the event to determine if limitations had been triggered while the FDIC held the note. Because the evidence reflects that accrual occurred after the FDIC transferred the note, we hold that Texas' four-year statute of limitations applies to bar Wolf's foreclosure. *See* Tex. Civ. Prac. & Rem. Code § 16.035(b).

## IV. Conclusion

The parties here agreed about the date the note was accelerated and the summary judgment evidence conclusively established the note's acceleration date. The court of appeals erred in holding that an optional acceleration clause cannot be effectively exercised without specific affirmative steps towards foreclosure. Rather, absent evidence of abandonment or a contrary agreement between the parties, a clear and unequivocal notice of intent to accelerate and a notice of acceleration is enough to conclusively establish acceleration. Therefore, the trial court correctly concluded that the Church's evidence conclusively established the date its note was accelerated and thus the date Wolf's cause of action accrued. And, because we further conclude that the cause of action accrued after the FDIC had assigned the note, we also hold that the Texas four-year statute of limitation applicable to foreclosure actions governs this case. Accordingly, we reverse the court of appeals' judgment and render judgment for the Church.

James A. Baker,

Justice

Opinion Delivered: April 12, 2001.